OPINION OF THE COURT
John S. Lockman, J.
Petition for an order pursuant to CPLR article 78 is denied and the cross motion by respondent to dismiss the petition (CPLR 3211, subd [a], par 7) is granted.
Petitioner, Claude Drolet, trains standardbred racehorses which apparently compete as “pacers” and “trotters” at racetracks located within the State of New York. Owners, trainers and other participants in harness racing in this State are subject to licensing by the State Harness Racing Commission which falls under the jurisdiction of the New York State Racing and Wagering Board. (See L 1953, ch 391, § 8, as amd; 9 NYCRR Subtit T.) Petitioner holds a license which entitles him to act as a trainer both in New York and, through reciprocal laws and regulations, in other States. Following the third race at Yonkers Raceway on June 30,1982, a chemical test of petitioner’s horse, Golden Opportunity, which competed in that race, revealed the presence of the drug clenbuterol in the horse’s system. Section 4120.5 of the Rules of the State Racing and Wagering Board (9 NYCRR 4120.5) provides:
*8 “Presumptions. Whenever the test * * * disclose[s] the presence in any horse of any drug, stimulant, depressant or sedative, in any amount whatsoever, it shall be presumed:
“(a) that the same was administered by a person or persons having the control and/or care and/or custody of such horse with the intent thereby to affect the speed or condition of such horse and the result of the race in which it participated;
“(b) that it was administered within the period [of 48 hours as prohibited by 9 NYCRR 4120.4]; and
“(c) that a sufficient quantity was administered to affect the speed or condition of such animal.”
The following provision holds that, “A trainer shall be responsible at all times for the condition of all horses trained by him.” (9 NYCRR 4120.6.)
By notice of suspension and hearing dated July 20,1982, respondent Racing and Wagering Board notified petitioner that it had found, “on July • 20, 1982 that the public’s welfare imperatively requires the emergency action of your immediate suspension” because of the chemical tests revealing the presence of drugs in the system of one of petitioner’s horses on June 30, 1982. The notice further stated that a hearing would be held on July 23, 1982 at respondent’s offices in the World Trade Center. According to the affirmation of Salvatore Curíale, counsel to respondent, copies of this notice were mailed to petitioner at his residence and care of Yonkers Raceway and another copy was sent to petitioner’s then attorney. Mr. Curíale further asserts that at the time the respondent was in daily contact with petitioner’s then attorney. Petitioner contends that the only copy which he received was the one sent to his former attorney. Unquestionably, however, petitioner had actual notice by July 21, 1982, since the petition by which this proceeding was commenced is dated July 21, 1982. Moreover, on July 21, 1982, pursuant to the suspension of petitioner’s license, Yonkers Raceway banned from competition one of petitioner’s horses which was scheduled to compete that day.
This proceeding was commenced by order to show cause granted and served on July 22,1982. The petition seeks an *9 order setting aside the “finding” contained in the “Notice of Hearing and Suspension” and, in effect, the reinstatement of petitioner’s license. By notice of cross motion served on July 26, 1982, the return date of petitioner’s order to show cause, respondent moved to dismiss the petition for failure to state a cause of action. (CPLR 3211, subd [a], par 7.) Petitioner contends that the cross motion is procedurally defective in that respondent has failed to comply with the three-day notice requirement of CPLR 2215. Clearly, where an application is brought on by order to show cause returnable in less than three business days (a weekend intervened) compliance with the three-day notice requirement of CPLR 2215 is rendered impossible. This does not impose upon the adversary the burden of cross-moving by order to show cause, but rather compels the court in its discretion to entertain the application despite short service where no substantial right of a party is prejudiced. (Berger v Berger, 16 Misc 2d 150.)
Petitioner contends that the “Notice of Hearing and Suspension” is ineffectual in that it was not properly served upon him. Subdivision 3 of section 401 of the State Administrative Procedure Act provides: “If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered, effective on the date specified in such order or upon service of a certified copy of such order on the licensee, whichever shall be later, pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.”
Petitioner argues that since he has never been personally served with a certified copy of the notice, subdivision 3 of section 401 of the State Administrative Procedure Act has not been complied with and he cannot be suspended summarily. Petitioner further relies upon section 5202.1 of the Rules of the State Racing and Wagering Board (9 NYCRR 5202.1) which provides: “Notice of hearing. A hearing on any matter as to which the State board is required to hold a hearing or otherwise determines so to do so shall be held upon 10 days’ notice to each party, except where the statute provides for a longer notice, or where the *10 applicant or respondent and the State board shall for good and sufficient cause have determined a more expeditious date to be appropriate and in the public interest and shall be conducted at * * * such hearing if given by certified or registered mail addressed to the party involved at the last known address shall be deemed sufficient.”
Respondent argues that subdivision 3 of section 401 of the State Administrative Procedure Act does not require personal service and that the copy mailed to petitioner at his residence fulfilled the certification requirement of subdivision 3 of section 401 of the State Administrative Procedure Act in that it was “signed by the Secretary to the Board on behalf of the Board”. Respondent does not contend that it complied with 9 NYCRR 5202.1, but argues that such a defect is a mere irregularity and not of jurisdictional dimensions.
The jurisdiction and powers of an administrative body derive from the statute which created it. (See Matter Foy v Schechter, 1 NY2d 604.) Thus, while adequate notice is required in order to comply with constitutional guarantees of due process, service of notice in the administrative context does not fulfill the same jurisdiction-acquiring function vis-a-vis the parties to the proceeding as does a summons in a court proceeding. For this reason where there is actual notice, procedural irregularities are overlooked since the object of the procedural requirement has been achieved albeit in a technically improper manner. (See Avelli v Town of Babylon, 54 Misc 2d 662, 665; Olin Inds. v National Labor Relations Bd., 192 F2d 799.)
Petitioner contends that respondent could not make the finding that a summary suspension of his license was required by the public health, safety or welfare without first conducting a hearing on notice to petitioner. Respondent naturally takes an opposite position and both rely upon the United States Supreme Court decision in Barry v Barchi (443 US 55). There the Supreme Court held (p 64): “It is conceded that, under New York law, Barchi’s license could have been suspended only upon a satisfactory showing that his horse had been drugged and that he was at least negligent in failing to prevent the drugging. As a threshold matter, therefore, it is clear that Barchi had a *11 property interest in his license sufficient to invoke the protection of the Due Process Clause. We do not agree with Barchi’s basic contention, however, that an evidentiary hearing was required prior to the effectuation of his supension. Unquestionably, the magnitude of a trainer’s interest in avoiding suspension is substantial; but the State also has an important interest in assuring the integrity of the racing carried on under its auspices. In these circumstances, it seems to us that the State is entitled to impose an interim suspension, pending a prompt judicial or administrative hearing that would definitely determine the issues, whenever it has satisfactorily established probable cause to believe that a horse has been drugged and that a trainer has been at least negligent in connection with the drugging.” Clearly, petitioner’s contention that a hearing must precede the summary suspension is without merit and neither section 401 of the State Administrative Procedure Act nor Gerard v Barry (59 AD2d 901), cited by petitioner, contain anything to the contrary.
Petitioner complains that his license was summarily suspended without a hearing and also that the hearing which must promptly follow a summary suspension was scheduled to occur on only three days’ notice. Petitioner, who failed to appear for the scheduled hearing on July 23, 1982, or to request that it be adjourned, perceives no anomaly in his demanding a hearing and in refusing to appear for the one which was scheduled. Having arrived at the conclusion that his claim that an adversary hearing must precede any summary suspension is without merit, the remaining claims are not ripe for adjudication by this court since petitioner has failed to pursue his administrative remedies. (Matter of Bier v Sarafan, 54 AD2d 1054.)
Accordingly, the petition pursuant to CPLR article 78 is dismissed.